UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:11CV-00002-JHM

ROBERT BRAGG                                                                                          PLAINTIFF

V.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY, ET AL.                                                              DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon cross-motions for summary judgment on the Administrative Record filed by Plaintiff, Robert Bragg [DN 14], and Defendants, Hartford Life and Accident Insurance Company, LG&E, and KU Energy LLC [DN 15]. Fully briefed, this matter is ripe for decision.

**I.  BACKGROUND**

Plaintiff, Robert Bragg, was an Senior Equipment Operator for an electrical power plant owned by LG&E and KU Energy for 35 years. As a Senior Equipment Operator, he operated tugboats and heavy machinery, earned nearly $5,000.00 per month, and received health insurance and an employer-matched 401(k) contribution. Bragg participated in the Group Long Term Disability Plan of E.ON U.S. LLC (the "Plan") issued by Defendant, Hartford Life and Accident Insurance Company, which is governed by § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*

The Plan provides for payment of long-term disability ("LTD") benefits to qualified participants who meet the Plan's definition of "total disability." For the first three months of LTD benefits, the Plan requires that a participant be unable to perform the essential elements of his *own*

*occupation* to qualify as totally disabled under the Plan. (AR H856.)[1] After the Elimination Period and the first three months of LTD benefits, a participant must be "prevented from performing the Essential Duties of Any Occupation for which [he is] qualified by education, training, or experience" to be considered totally disabled under the Plan. (Id.) "Any Occupation" is defined under the Plan as an occupation:

    1. for which you are qualified by education, training or experience; and
    2. that has an earnings potential greater than an amount equal to the product of your Indexed Pre-disability Earnings and the Benefit Percentage.

(AR H853; AR H044.)

In April of 2009, Bragg experienced a coronary event that required placement of a permanent pacemaker. Bragg's last day of work was April 21, 2009. Bragg applied for and received LTD benefits from July 21, 2009, to January 20, 2010. Pursuant to the terms of the Plan, Plaintiff received LTD benefits from July 21, 2009, to October 21, 2009, based upon his inability to perform the duties of his *own occupation*. After the 90-day Elimination Period and the first three months of LTD benefits, Hartford approved Bragg for continued LTD benefits under the more rigorous requirement of inability to perform *any occupation* for which he was qualified by education, training, or experience. Specifically, Hartford relied upon "all the medical and vocational information in [his] claim file." (AR H039.) However, after three months, Hartford terminated further benefits as of January 20, 2010, finding that Plaintiff was no longer disabled under the terms of the Plan. Hartford based this decision upon a statement from Plaintiff's cardiologist dated

---

[1] The Plan provides that Total Disability or Totally Disabled means that: [D]uring the Elimination Period; and . . . for the next 3 month(s), you are prevented by . . . sickness . . . from performing the Essential Duties of Your Occupation, and as a result you are earning less than 20% of your Pre-disability Earnings, unless engaged in a program of Rehabilitative Employment approved by us." (AR H856.)

January 4, 2010, in which he checked a box indicating that Plaintiff could perform sedentary or light work with minimal restrictions and upon Hartford's Vocational Rehabilitation Case Manager's assessment of occupations that Hartford deemed Bragg qualified by education, training, or experience. (AR H023-H027.)

Bragg appealed Hartford's decision by letter dated July 15, 2010. Bragg submitted additional medical evidence from his treating physicians, including his cardiologist, his orthopedic surgeon, and his primary care provider. By letter dated October 25, 2010, Hartford denied Bragg's appeal finding in relevant part:

> We have determined that the combined information in Mr. Bragg's file supports that he is capable of sedentary and light physical demands. The January 8, 2010 Employability Analysis completed by The Hartford's Rehabilitation Case Manager identified seven sedentary or light occupations for which Mr. Bragg is qualified to perform based on his functional capacities, education, training and work history. These occupations do not expose Mr. Bragg to high voltage or magnetic fields. Therefore, Mr. Bragg is not prevented from performing the Essential Duties of Any Occupation. As a result, he does not meet the policy definition of Disability that applied to his claim as of October 21, 2009, and we must uphold the decision to terminate his claim for benefits effective January 21, 2010.

(AR H012.) This suit followed.

## II. STANDARD OF REVIEW

The Court reviews Hartford's decision to terminate Bragg's long-term disability benefits under "the highly deferential arbitrary and capricious standard of review" because, as both parties acknowledge, Hartford has discretionary authority to interpret and apply the Plan. Killian v. Healthsource Provident Adm'rs, Inc., 152 F.3d 514, 520 (6th Cir. 1998) (quotation omitted). The arbitrary and capricious standard "is the least demanding form of judicial review. . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." Perry v. United Food and Commercial Workers Dist. Unions

3

405 and 442, 64 F.3d 238, 242 (6th Cir.1995). Put another way, a decision will be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Baker v. United Mine Workers of America Health and Retirement Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

Of course, while the arbitrary and capricious standard is deferential "it is not . . . without some teeth." McDonald v. Western–Southern Life Ins. Co., 347 F.3d 161, 172 (6th Cir. 2003) (quotation omitted). "[M]erely because [a court's] review must be deferential does not mean [its review] must also be inconsequential. . . . [T]he federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions." Moon v. Unum Provident Corp., 405 F.3d 373, 379 (6th Cir. 2005). "The obligation under ERISA to review the administrative record in order to determine whether the plan administrator acted arbitrarily and capriciously 'inherently includes some review of the quality and quantity of the medical evidence and the opinions on both sides of the issues.'" Evans v. UnumProvident Corp., 434 F.3d 866, 876 (6th Cir. 2006) (citing McDonald, 347 F.3d at 172.).

To determine whether a plan administrator's decision to deny benefits was arbitrary and capricious, courts consider not just the medical evidence and opinions, but also whether there is a conflict of interest, whether the plan administrator failed to give consideration to the Social Security Administration's determination that the applicant was totally disabled, and whether the plan administrator based its decision to deny benefits on a file review instead of conducting a physical examination of the applicant. DeLisle v. Sun Life Assurance Co. of Canada, 558 F.3d 440 (6th Cir. 2009); Bennett v. Kemper Nat. Services, Inc., 514 F.3d 547 (6th Cir. 2008); Calvert v. Firstar Finance, Inc., 409 F.3d 286 (6th Cir. 2005). Such findings do not change the standard of review,

but they do factor into the Court's analysis when determining whether the administrator's decision was arbitrary or capricious. Bennett, 514 F.3d at 552.

### III.  DISCUSSION

Bragg contends that the combination of his heart condition and his other physical ailments, including degenerative joint disease of both knees, degenerative joint disease of the spine, obstructive sleep apnea, chronic obstructive pulmonary disease, diabetes mellitus type 2, and morbid obesity, qualifies him as totally disabled under the Plan. Bragg argues that Hartford's decision to terminate his LTD benefits was arbitrary and capricious because (1) Hartford failed to reconcile its own conclusion that Plaintiff could work in other jobs with the Social Security Administration's conclusion that he could not; (2) Hartford relied significantly on the reports submitted by three peer review physicians, Dr. Evan Appelbaum, Dr. Darrin Campo, and Dr. John Ayers, all associated with MES Solutions; and (3) the Employability Analysis Report considered only the functional capabilities set forth by Bragg's cardiologist and not his other treating physicians. Additionally, Plaintiff argues that the December 9, 2009, question asked by Hartford to Plaintiff's cardiologist prompting the termination of benefits was misleading and confusing and should not have been relied upon by Hartford in its decision to deny the LTD benefits.

#### A. Conflict of Interest

For purposes of ERISA claims, there is a conflict of interest where the insurance company is both the "decision-maker, determining which claims are covered, and also the payor of those claims." Calvert, 409 F.3d at 292 (citation omitted). In this case, Hartford is both the decision-maker and payor under the insurance policy. Accordingly, the Court will "view [Hartford's] explanation [for denying Bragg's claim for benefits] with some skepticism" and will weigh this conflict as a

5

factor in deciding whether Hartford's decision was arbitrary and capricious. Moon, 405 F.3d at 381–82.

### B. Social Security Benefits Decision

Plaintiff argues that Hartford's decision to terminate his disability benefits was arbitrary and capricious because Hartford failed to reconcile its own conclusion that Plaintiff could work in other jobs with the Social Security Administration's conclusion that he could not. An award of disability benefits from the Social Security Administration ("SSA") does not automatically entitle a party to disability coverage under an insurance plan. Calvert, 409 F.3d at 294. However, the Sixth Circuit has explained that such a discrepancy is "far from meaningless." Id. A reviewing court should favor finding that an administrator's decision to deny benefits was arbitrary and capricious where an applicant is encouraged to apply for Social Security benefits, the plan administrator benefits from payouts by the SSA, and the administrator fails to adequately explain the discrepancy between the two decisions. Bennett, 514 F.3d at 554; Glenn v. MetLife, 461 F.3d 660, 669 (6th Cir. 2006).

"As elaborated by the Seventh Circuit in Ladd v. ITT Corp., 148 F.3d 753, 756 (7th Cir.1998), and later adopted by the Sixth Circuit, the rationale for this factor is that it serves as a form of estoppel, reducing fraud by preventing the insurer from taking inconsistent positions in related proceedings." Kouns v. Hartford Life and Accidental Insurance Co., 780 F. Supp. 2d 578, *589 (N.D. Ohio 2011)(citing Glenn, 461 F.3d at 667–68). "The prototypical example of this sort of behavior is a situation where an insurer advocates on behalf of an individual before the Social Security Administration with one hand, but then with the other hand attempts to deem the insured not disabled under the terms of the disability insurance." Id.

In the present case, Hartford required Plaintiff to apply for benefits with the SSA and it

received a deduction based on those benefits. In fact, not only did Hartford require Plaintiff to apply for SSA benefits, the Plan provided that "[i]f the Social Security Administration denies the appeals, benefits payable under this plan will terminate." (AR H298.) Further, the only explanation Hartford gave Plaintiff for the discrepancy between its decision to deny his LTD claim and the Social Security Administration's decision was to say that it was not bound by the SSA's findings and that the two organizations apply different standards in making their disability determinations. Although this is true, see Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832-33 (2003) and Whitaker v. Hartford Life and Accident Ins. Co., 404 F.3d 947, 949 (6th Cir. 2005), the Court finds the explanation inadequate. If it were enough for Hartford, or any insurer, to simply recite a disclaimer that the SSA applies a different standard, this factor would be meaningless. See Costello v. Sun Life Assur. Co. of Canada, 2009 WL 3347102, *3 (W.D. Ky. Oct. 14, 2009). The Court therefore concludes that Hartford's failure to provide a substantive explanation for the discrepancy between its decision and the Social Security Administration's decision supports a finding that Hartford was arbitrary and capricious in denying Plaintiff's claim.[2]

### C. Peer Review Reports

Plaintiff argues that Hartford's final decision to deny him LTD benefits was arbitrary and capricious because Hartford relied significantly on the reports submitted by three peer review physicians instead of his treating physicians. In the peer review reports, Dr. Evan Appelbaum, Dr. Darrin Campo, and Dr. John Ayers, all associated with MES Solutions, represent that they have

---

[2]It should also be noted that the parties have cited to only the SSA Notice of Award issued on October 30, 2009. The parties have not cited to the actual SSA decision. In reviewing the current record, the Court questions whether Hartford even examined the actual SSA determination, in addition to the Notice of Award.

spoken to Bragg's treating physicians and set forth in their reports the substance of the conversation. The physical limitations allegedly placed upon Plaintiff by his treating physicians in their telephone conversations with the peer review physicians differ in some respects than the opinions articulated by Bragg's treating physicians in their written reports and letters filed in the administrative record.

The Sixth Circuit has repeatedly noted that there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." Calvert, 409 F.3d. at 296. However, given the differences between the opinion of Plaintiff's treating physicians set forth in the peer review reports and the opinions set forth in the written reports and letters submitted by Plaintiff to Hartford, the Court finds that Hartford's reliance on the peer review reports to be unreasonable. The best indication of both Dr. Moore's and ARNP English's opinions about Bragg's limitations are in their written reports and letters filed in the Administrative Record.[3] Acceptance of the peer review physician's statements concerning the limitations the treating physicians imposed without a clarification by Hartford of the different opinions articulated in the written reports weighs in favor of a finding that Hartford's denial of benefits is arbitrary and capricious.

Furthermore, Hartford did not order an Independent Medical Examination of Bragg and instead relied on the peer review reports discussed above. While there is "nothing inherently objectionable about a file review by a qualified physician," the failure to conduct a physical examination may "raise questions about the thoroughness and accuracy of the benefits determination"and may suggest that an insurer's decision to deny benefits was arbitrary and

---

[3]In its final brief, Hartford argues that Steve English as a nurse practitioner does not qualify to render an opinion with respect to proving Bragg suffers from a disability pursuant to the Plan. (AR H855.) Given Plaintiff has not had the opportunity to address this argument, the Plaintiff upon remand should examine the Plan and provide the necessary "proof of loss" to Hartford (AR H851.)

capricious. Calvert, 409 F.3d at 295-296; Glenn v. MetLife, 461 F.3d 660, 671 (6th Cir. 2006)(decision to resolve conflict through file review rather than examination is relevant factor in deciding if administrator decision is arbitrary and capricious).

### D. Employability Analysis Report

In making its final decision on Plaintiff's appeal, Hartford utilized a January 8, 2010, Employability Analysis Report prepared by David Pritchard, Hartford's Rehabilitation Case Manager. Relying solely on the functional capabilities provided by Dr. Scott Reader on July 4, 2010, Pritchard concluded that Bragg could be employed as a Sanitary-Landfill Supervisor; Dispatcher, Chief II; Scheduler, Maintenance; Repair-Order Clerk; Jacket Preparer; and Batch-Records Clerk. (AR H106; AR H010.) The occupations of sanitation -Landfill Supervisor and Dispatcher Chief II in the petroleum and natural gas industry were listed as a "good" match in the report. The four remaining occupations were characterized as fair to potential. (AR H111.) Plaintiff challenges Hartford's reliance upon the Employability Analysis Report arguing that (1) the report does not consider the physical limitations placed on Bragg by orthopedic surgeon Keith Moore or his primary care provider, Nurse Practitioner Steve English and (2) that there is no indication on the record that Plaintiff is qualified through education, training, or experience to perform any of the jobs identified.

Under the "any occupation" standard, a plan administrator is "under a duty to make a reasonable inquiry into the types of skills [a claimant] possesses and whether those skills may be used at another job that can pay [him] the same salary range as [his pre-disability earnings]." McDonald, 347 F.3d at 162. "Just as a plan administrator must consider some inquiry into the nature and transferability of a claimant's job skills, a plan administrator must make some inquiry

9

into whether the jobs selected are ones that the claimant can reasonably perform in light of specific disabilities." Brooking v. Hartford Life and Accident Ins. Co., 167 Fed. Appx. 544, 549 (6th Cir. 2006). See also Fant v. Hartford Life and Accident Ins. Co., 2010 WL 3324974, *9 (E.D. Mich. Aug. 20, 2010).

First, the Employability Assessment Report considered only the functional capabilities set forth by Bragg's cardiologist in his January 4, 2010, correspondence with Hartford.[4] The Employability Assessment Report did not consider the physical limitations placed on Bragg by his orthopedic surgeon or his primary care provider. For example, the Employability Analysis Report did not consider Dr. Moore's specific limitations of "one hour at a time standing and no more than three to four hours out of an eight hour day" and "periods of elevation of thirty minutes on an as-needed basis three or four times during an eight hour day." (AR H353-354.) Accordingly, Hartford's denial of Bragg's long-term disability benefits based only on Bragg's cardiovascular limitations does not reflect a reasoned review of the claim. See Kouns, 780 F. Supp. 2d at 588; Pearson v. Group Long Term Disability Plan for Employees of Tyco International, Inc., 538 F. Supp. 2d 1073, 1086 (E.D. Ark. March 3, 2008).

Second, even assuming the functional limitations considered by Pritchard were correct, the Court questions the reliance by Hartford on the identified occupations considering the Plan

---

[4]Under the heading of "Functional Capabilities," the Employability Analysis Report states:
> The functional capabilities used in this analysis are based on 1/4/10 correspondence from Dr. Scott Reader in which he reports that Mr. Bragg could return to a sedentary or light occupation as long as he is not exposed to high voltage or magnetic fields.

(AR H105.)

requirement that Bragg must be qualified by education, training or experience for these positions. As discussed above, Pritchard identified six occupations at which Bragg could be employed: a Sanitary-Landfill Supervisor; Dispatcher, Chief II, in the Petroleum and Natural Gas Industry; Scheduler, Maintenance; Repair-Order Clerk; Jacket Preparer; and Batch-Records Clerk. (AR H106; AR H010.) The Employability Assessment Report clearly reflects that all of these occupations would require at least some training in tools and materials. Therefore, a strong argument can be made that the Employability Assessment Report does support a finding that Bragg is currently qualified to perform any of these jobs identified.

Bragg spent thirty-five years as a Senior Equipment Operator for an electrical power plant. Bragg is 60-years-old and has no other training or experience. The employer describes a Senior Equipment Operator as one who "operates river tug boats and deliver[s] coal to the plants." Based on that description, the Employability Analysis Report concluded that as of January 8, 2010, Bragg could obtain a supervisory position in the sanitation/landfill industry, natural gas industry, construction industry, print industry, and plastic-mixing industry, which appears to be "a remarkable leap in logic." See Pearson, 538 F. Supp. 2d at 1087.

For these reasons, the Court weighs this factor against the reasonableness of Hartford's decision.

### E.  Remand

After reviewing the administrative record with due skepticism of Hartford's decision because of the conflict of interest and weighing the above factors, the Court concludes that the Hartford did not engage in a deliberate and principled reasoning process. However, the record does not clearly establish that Bragg is disabled under the terms of the Plan and entitled to judgment in his favor.

"'[W]here the problem is with the integrity of the plan's decision-making process, rather than that a claimant was denied benefits to which he was clearly entitled,'" remand to the plan administrator is the appropriate remedy. Cooper v. Life Ins. Co. of North Am., 486 F.3d 157, 171 (6th Cir. 2007) (quoting Elliott v. Metro. Life Ins. Co., 473 F.3d 613, 622 (6th Cir. 2006)).  Accordingly, the Court will remand the case to Hartford to provide "a full and fair review" of Bragg's claim for long-term disability benefits. See, e.g., Helfman v. GE Group Life Assur. Co., 573 F.3d 383, 396 (6th Cir. 2009); Smith v. Continental Cas. Co., 450 F.3d 253, 255 (6th Cir. 2006).

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that the parties' cross-motions for judgment on the administrative record [DN 14, DN 15] are **DENIED** and the case is **REMANDED** to Hartford for a full and fair review.

cc: counsel of record